Opinion issued May 3, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00245-CR

———————————

Silverio Silva, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 184th District Court

Harris County, Texas



Trial Court Case No. 1153744

 



 

MEMORANDUM OPINION

          A
jury convicted Silverio Silva of possession with
intent to deliver a controlled substance, namely, cocaine weighing in excess of
400 grams, a first‑degree felony.  Tex. Health & Safety Code Ann. §
481.112(a), (f) (West 2010).  The trial
court assessed punishment at forty years’ confinement and a $10,000 fine.  On appeal, Silva contends that the trial
court erred in: (1) entering judgment on the jury’s verdict because no evidence
corroborates an accomplice‑witness’s testimony implicating Silva; (2)
improperly commenting on the weight of evidence during voir dire in a way that
lessened the State’s burden of proof; (3) failing to excuse a jury panel
member, who was later seated on the jury, for cause; (4) denying Silva’s motion
to suppress; (5) including both the law of parties and the accomplice-witness
rule in the charge; and (6) overruling Silva’s objection to the prosecutor’s
improper comment during closing argument. 
We hold that the evidence contains sufficient independent corroboration
of the testimony of Carlos Bernal, the accomplice-witness; Silva waived any
complaints concerning voir dire and jury selection; the trial court did not
abuse its discretion in denying Silva’s motion to suppress; any error in the
jury charge did not cause egregious harm; and the trial court did not abuse its
discretion in overruling Silva’s objection to the prosecutor’s closing
argument.  We therefore affirm.

Background

          In
February 2008, the Houston Police Department received a tip that narcotics were
being moved to or stored at a Harris County business that operated a body shop
and sold used cars.  Officer C. Cantu,
who worked with the narcotics division, called a fellow narcotics officer, M.
Valles, and asked him to conduct surveillance of the business.  Using an unmarked vehicle, Officer Valles situated
himself across the street from the business. 


Bernal’s testimony against Silva at
trial explains the events that occurred just before Officer Valles began the
surveillance.  Bernal recounted that
Silva picked him up at work and drove him in a white Ford Taurus to the used
car lot.  Silva gave Bernal the keys to
the Taurus and assisted him in transferring the bricks of cocaine from another car
into the Taurus.  After completing the
transfer, they parked the Taurus and waited to receive a telephone call with
information about where to transport the drugs. 


Officer Valles, using binoculars, noticed
employees walking between the office and the repair bays.  These employees were completing body work,
painting and cleaning cars.  In another
area, he saw two individuals—later
identified as Silva and Bernal.  Silva
and Bernal were not involved in any of the employee activities or interacting with
the other employees.  Instead, they were
walking back and forth, talking on their cellphones and, occasionally, to each
other.  Near them, Officer Valles noticed
a car that had a cover over it.  He
observed that none of the workers approached Silva, Bernal, or the covered car.

          Officer
Valles continued to watch Silva and Bernal, who eventually walked off.  Silva and Bernal returned a short while later,
approached the car and pulled the cover off, revealing the Taurus.  They threw the car cover into the trunk and drove
off the lot toward the Gulf Freeway.  

          As
they passed his surveillance location, Officer Valles saw that neither Bernal,
who was driving, nor Silva, who was riding in the front seat, was wearing a
seat belt.  He pulled out behind them and
began following the Taurus.  Bernal
failed to turn on the directional signal as he turned onto the freeway ramp, then,
once on the freeway, changed lanes four or five times without signaling. 

          Once Officer
Valles determined that the Taurus would continue heading south, he called HPD dispatch
and asked for a marked unit to conduct a traffic stop on the Taurus.  Patrol Officers H. Trent and R. Moss
responded to the call.  The patrol unit
trailed behind Officer Valles’ car as Officer Valles
followed the Taurus, eventually exiting the freeway at Almeda-Genoa.  As the Taurus headed into the left lane to
turn at the light, the patrol unit drove around Officer Valles’ car, got behind
the Taurus, and performed the traffic stop. 
Stopping his car a block behind, Officer Valles communicated with the
patrol officers by radio to explain the circumstances leading to the stop.  

          The
patrol officers secured Silva and Bernal in the back seat of the patrol car.  One officer then drove the patrol car to a
nearby gas station away from the traffic while the other officer followed in
the Taurus.  The officers asked Bernal
for permission to search the car, and he gave it to them.  After looking over the Taurus, the patrol officers
called Officer Valles to the scene.  They
showed Officer Valles that the backseat was wedged
tightly in the car and appeared to have been altered by attaching a hydraulic
mechanism.  Using a flashlight, Valles
peered into the bottom left corner of the seat back and saw a few gray,
brick-shaped packages.  Officer Valles’s
experience told him that criminals commonly used this type of packaging to
transport cocaine.  The trunk contained a
speaker box with a false plywood wall behind it.  Officer Valles pulled off the false wall and
revealed additional, similarly wrapped packages.  He then contacted Officer Cantu to inform him
of the find.  Officer Cantu arrived a
short while later and, after Officer Valles briefed him, took over the
investigation.  Officer Cantu and his
squad removed a total of twenty-nine one-kilogram packages of a powder that later
testing confirmed was cocaine, with a street value of approximately $2.9
million.

          Meanwhile,
both Silva and Bernal appeared upset and extremely nervous in reaction to the
discovery.  They kept their heads down
and, despite the cold February weather, were sweating profusely.  They swallowed constantly and had dry mouths
and lips.  They had difficulty
maintaining eye contact and stuttered while answering the officers’
questions.  

          When
Officer Valles asked Silva why he was in the car, Silva responded that Bernal
was giving him a ride, but could not explain where they were going or where
they had come from.  Silva’s evasiveness
and the fact that his answers were not consistent with Bernal’s responses led Valles to conclude that Silva was lying.  Officer Valles also noted that Silva did not
get angry or confront Bernal when the officers found the cocaine, a reaction
that he would have expected if Silva had not already known about its presence
in the car.  Further, cocaine has a
unique smell which, Officer Valles opined, persons
traveling in the vehicle would have noticed. 


          Later
in their investigation, the officers discovered that the Ford Taurus was not
registered to either Bernal or Silva. 
The registration named Roberto Martinez as the car’s owner, but listed
the home address of the used-car lot’s owner, Victor de la Fuentes.  Approximately two months after Silva’s
arrest, de la Fuentes was arrested after he delivered several kilos of cocaine
to an undercover officer.  

Discussion

I.              
 Evidentiary Sufficiency Under the Accomplice
Witness Rule

Silva first contends that other
evidence did not sufficiently corroborate Bernal’s testimony against him to
sustain his conviction under the accomplice‑witness rule.  Under article 38.14 of the Texas Code of
Criminal Procedure, “A conviction cannot be had upon the testimony of an
accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed; and the corroboration is not sufficient
if it merely shows the commission of the offense.”  Tex.
Code Crim. Proc. Ann. art. 38.14 (West 2005).  “The test for sufficient corroboration is to
eliminate from consideration the accomplice testimony and then examine the
other inculpatory evidence to ascertain whether the remaining evidence tends to
connect the defendant with the offense.” McDuff v. State, 939 S.W.3d 607, 612 (Tex. Crim. App. 1997) (citing Burks v. State, 876 S.W.2d 877, 887 (Tex.
Crim. App. 1994)); Rios v. State, 263
S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.] 2005, pet. dism’d). 

In conducting this sufficiency
analysis, we disregard all accomplice evidence and determine whether the other
inculpatory facts and circumstances in evidence tend to connect appellant to
the offense.  Munoz v. State, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993).  The evidence is sufficient if some
non-accomplice evidence tends to connect appellant to the commission of the
offense alleged in the indictment; it need not, by itself, directly link the
defendant to the crime or prove his guilt beyond a reasonable doubt.  McDuff,
939 S.W.3d at 613; Hernandez v. State,
939 S.W.3d 173, 176 (Tex. Crim. App. 1997); see
also Malone v. State, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008)
(explaining that circumstances that are “apparently insignificant may
constitute sufficient evidence of corroboration”); Vasquez v. State, 56 S.W.3d 46, 48 (Tex. Crim. App. 2001) (noting
that rule requires “some non-accomplice evidence tending to connect the
defendant to the crime, not to every element of the crime”).  




 

1.             
Possession with intent to deliver

A person commits the offense of
possession with intent to deliver a controlled substance if he knowingly
possesses with intent to deliver a controlled substance listed in Penalty Group
one, which includes cocaine.  See Tex.
Health & Safety Code Ann. §§ 481.112(a), (f), 481.102(D) (West 2010) (listing cocaine
in Penalty Group 1).  In a
possession-with-intent-to-deliver case, the State must prove that the defendant
(1) exercised care, custody, control, or management over the controlled
substance; (2) intended to deliver the controlled substance to another;
and (3) knew that the substance in his possession was a controlled
substance.  Id. §§ 481.002(38), 481.112(a); Pena v. State, 251 S.W.3d 601, 606 (Tex. App.—Houston [1st Dist.]
2007, pet. ref’d).  Possession is
voluntary “if the possessor knowingly obtains or receives the thing possessed
or is aware of his control of the thing for a sufficient time to permit him to
terminate his control.”  Tex. Penal Code Ann. § 6.01(b) (West 2011).  “‘Deliver’ means to transfer, actually or
constructively, to another a controlled substance . . ., regardless of whether
there is an agency relationship. The term includes offering to sell a
controlled substance. . . .”  Tex. Health & Safety Code Ann. § 481.002(8).
 These elements may be established by
either direct or circumstantial evidence.  Poindexter
v. State, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005) (quoting Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995)).

When a defendant is not in
exclusive possession of the place where the controlled substance is found, the
State must prove additional, independent facts and circumstances that
affirmatively link the defendant to the contraband in such a way that it can be
concluded that the defendant had knowledge of the contraband and exercised
control over it.  Roberson v. State, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st
Dist.] 2002, pet. ref’d).  An affirmative
link generates a reasonable inference that the defendant knew of the contraband’s
existence and exercised control over it.  Johnson
v. State, 658 S.W.2d 623, 627 (Tex. Crim. App. 1983), overruled on other grounds by Woods v. State, 956 S.W.2d 33, 36 n.3,
39 (Tex. Crim. App. 1997); Roberson,
80 S.W.3d at 735.  Courts have identified
a non‑exhaustive list of factors that may help to show an affirmative
link to controlled substances, including: (1) the accused’s presence when
a search is conducted, (2) whether the contraband was in plain view, (3) the
accused’s proximity to and accessibility of the contraband, (4) whether
the accused was under the influence of narcotics when arrested, (5) whether
other contraband or narcotics were found in the accused’s possession, (6) any
incriminating statements the accused made when arrested, (7) whether the
accused made furtive gestures or attempted to flee, (8) any odor of
contraband, (9) the presence of other contraband or paraphernalia,
(10) the accused’s ownership or right to possess the place where the
contraband was found, (11) whether the place where the drugs were found
was enclosed, (12) whether the defendant was found with a large amount of
cash, and (13) whether the conduct of the accused indicated consciousness
of guilt.  See Evans v. State, 202
S.W.3d 158, 162 n.12 (Tex. Crim. App. 1996); Roberson, 80 S.W.3d at 735 n.2.  The number of links present is not as
important as the logical force of any of the links to prove the accused
knowingly possessed the contraband.  Roberson, 80 S.W.3d at 735.  

As in a typical evidentiary
sufficiency analysis, consideration of these factors aids in determining
whether, apart from accomplice testimony, satisfactory corroborative evidence tends
to connect appellant to the offense. 
Applying the factors, we conclude that Officer Valles’s testimony
independently links Silva with the thirty-nine kilograms of cocaine found in
the Taurus.  First, Officer Valles
observed that Silva and Bernal appeared to act in tandem.  Both intermittently spoke on their cellphones
and then with each other, and neither had any contact with the workers on
site.  They left the lot together,
returned together, and pulled the cover from the car.  “Evidence that the defendant was in the
company of the accomplice at or near the time or place of the offense is proper
corroborating evidence.”  McDuff, 939 S.W.3d at 613.  Second,
Officer Valles testified that when the police found the cocaine secreted behind
the false wall, Silva, despite the cold weather, was sweating profusely and
avoided eye contact with Valles while answering
questions.  Silva’s mouth was so dry he
had difficulty speaking, and his story about getting a ride from Bernal was
patently unconvincing.  Officer Valles
confirmed that Silva’s behavior indicated consciousness of guilt.  Third, Officer Valles testified that the large
amount of cocaine in the closed car would have had a discernible odor.  We hold that the record satisfies article
38.14’s requirement that evidence independent of the accomplice witness’s
testimony connect the defendant with the offense committed. 

II.           
Court Statements During Voir Dire

Silva contends that the trial
court’s comments amount to fundamental error because they diminished the
State’s burden of proof.  He complains
that the trial court erred in:

·      
reading the indictment to the venire without explaining that it was not
evidence of guilt;

 

·      
referring to the first phase of trial as the “guilt phase,” rather than
the “guilt-innocence phase”; and

 

·      
referring to Bernal, the accomplice-witness, as a witness who may be
proved guilty of the crime.

 

Silva did not object in the trial
court to the comments he complains of on appeal.  See
Tex. R. App. P. 33.1(a).  As a general rule, trial counsel must object
to preserve error, even if it is “incurable” or “constitutional.”  See Cockrell
v. State, 933 S.W.2d 73, 89 (Tex. Crim. App.
1996).  In seeking review here, Silva relies
on the plurality in Blue v. State,
which found fundamental error of constitutional dimension and reversed without
requiring an objection where the trial judge had expressed his personal view regarding
appellant’s guilt and decision to go to trial. 
41 S.W.3d 129, 132–33 (Tex. Crim. App. 2000).  There, the trial judge informed the venire
that he would have preferred that the defendant accept the State’s plea bargain
and plead guilty, and that defense attorneys routinely suborn perjury.  Id.
at 130–32.  

          In this case, the trial judge made
clear that the State had the burden to prove each allegation in the indictment,
saying:

Of course, the State has to prove this
occurred in Harris County, Texas. . . . 
Then they have to prove that Mr. Silva is the right person; that is,
that he is the person who had the drugs, there is not some mistaken identity or
something like that. . . .  And the
reason that that’s in there is to avoid the conviction or prosecution of
innocent people.”  

This explanation communicated to the jury that the
indictment itself was not evidence, but stated “the main issues . . . the State
has to prove,” and it did not relieve the State of its burden of proof.  The trial court also pointed out that Silva
was entitled to the presumption of innocence.  None of the trial court’s comments rose to such a level as to bear on the
presumption of innocence or vitiate the impartiality of the jury.  See
Jasper v. State, 61 S.W.3d 413, 420–22 (Tex. Crim. App. 2001).  We therefore hold that Silva waived these
complaints by failing to object to the trial court’s comments.  




 

III.        
Failure
to Excuse Prospective Jurors for Cause

Silva next complains that the trial court erred in failing to grant his
request to call prospective juror number 23 to the bench for further
questioning after that juror had indicated a bias in favor of law enforcement.  Silva contends that further questioning would
have allowed him to strike juror number 23 for cause instead of using a
peremptory strike to prevent him from being seated on the jury.  Silva also complains of the trial court’s
denial of his challenge to seating prospective juror number 40 on the jury.

“A challenge for cause is an objection made to a particular juror,
alleging some fact which renders the juror incapable or unfit to serve on the
jury.”  Tex.
Code Crim. Proc. Ann. art. 35.16(a) (West 2006).  Before we may address the trial court’s voir
dire rulings, however, the record must show that the appellant preserved the
objection for appellate review.  See Tex.
R. App. P. 33.1.  Article 35.16 of
the Code of Criminal Procedure lists the specific grounds on which a potential
juror may be challenged for cause.  Tex. Code Crim. Proc. Ann. art. 35.16(c)(2).  When a prospective
juror is subject to challenge under article 35.16, the failure to timely assert
that challenge waives the complaint on appeal.  Jackson
v. State, 548 S.W.2d 685, 697 (Tex. Crim. App. 1977).  To preserve the challenge for appellate review,
an appellant must: (1) assert a clear and specific challenge for cause; (2) use
a peremptory strike on the prospective juror; (3) exhaust his peremptory
strikes; (4) request additional peremptory strikes; (5) identify an objectionable
juror; and (6) claim that he would have struck the objectionable juror with a
peremptory strike if he had had a strike to use.  Allen v.
State, 108 S.W.3d 281, 282 (Tex. Crim. App. 2003); Fulenwider v. State, 176 S.W.3d 290, 300 (Tex. App.—Houston [1st
Dist.] 2004, pet. ref’d).

          Silva did not articulate any specific
ground for his challenges to either prospective juror number 23, on whom he
exercised a peremptory strike, or prospective juror 40.  Silva therefore failed to preserve these
complaints for appeal. See Jackson, 548 S.W.2d at 697.  

IV.          
Denial
of motion to suppress

Silva contends that the trial court erred in denying his motion to
suppress the evidence seized from the car because the State failed to prove
that an exception to the warrant requirement authorized the search and seizure—namely,
that either Silva or Bernal voluntarily consented to the search.  See Maxwell
v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) (“Consent to search is
one of the well‑established exceptions to the constitutional requirements
of both probable cause and a warrant.”).  We review the trial court’s ruling on a motion
to suppress for abuse of discretion.  Shepherd v. State, 273 S.W.3d 681, 684
(Tex. Crim. App. 2008).  We view the
evidence in the light most favorable to the trial court’s ruling.  Wiede v.
State, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting State v. Kelly, 204 S.W.3d 808, 818
(Tex. Crim. App. 2006)).  The trial judge
is the “sole trier of fact and judge of credibility of the witnesses and the
weight to be given to their testimony.”  St. George v. State, 237 S.W.3d 720, 725
(Tex. Crim. App. 2007).  The trial court
may choose to believe or disbelieve any part or all of a witness’s testimony.  Green v.
State, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996) (citing Allridge v. State, 850 S.W.2d 471, 492
(Tex. Crim. App. 1991)).  We defer to a
trial court’s express or implied determination of historical facts, as well as
to its application of law to fact questions if those questions turn on the
evaluation of a witness’s credibility and demeanor.  See
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We sustain the trial court’s ruling if it is
reasonably supported by the record and correct on any theory of law applicable
to the case.  Laney v. State, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (citing Willover v. State, 70 S.W.3d 841, 845
(Tex. Crim. App. 2002)).  

          Bernal’s testimony supports the trial
court’s ruling.  When asked if he recalled
the officers asking for his consent to search the Taurus, he responded:

A.            
If they asked
permission, yes.

Q.      And you
said you would let them; is that right?

A.      Yes.

Silva
contends that that Bernal’s inability to speak English makes it doubtful that
he voluntarily consented to the search. 
But, although Bernal had the assistance of an interpreter at trial, he
also explained that he spoke some English, and did not testify to any
uncertainty concerning the content of the officer’s request or the
voluntariness of his consent.  Further,
Officer Moss testified that his partner asked the Taurus’s driver (Bernal) in
Spanish whether he consented to a search of the car, and Bernal did so.  Because the record reasonably supports the
trial court’s ruling on this ground, we need not consider whether it also
upholds the ruling under the State’s alternative grounds—the inventory search
exception—or whether, as the State further contends, Silva lacks standing to
complain of the search.  We hold that the
trial court did not abuse its discretion in denying Silva’s motion to suppress.

V.             
Jury
Instructions on Accomplice-Witness Rule and Law of Parties

Silva contends that the trial court
erred by improperly instructing the jury on the accomplice-witness rule and
also on the law of parties, which combined to form a repetitive
instruction.  We review a claim of
jury-charge error using the procedure set out in Almanza v. State.  686 S.W.2d 157 (Tex. Crim. App. 1985).  First, we determine whether there is error in
the charge.  Ngo v. State, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing Middleton v. State, 125 S.W.3d 450, 453
(Tex. Crim. App. 2003)).  If error exists
and the appellant objected to the error at trial, reversal is required if the
error “is calculated to injure the rights of the defendant,” in other words, if
there is “some harm.”  Almanza, 686 S.W.2d at 171.  If the error was not objected to, it must be
“fundamental” and will require reversal only if it was so egregious and created
such harm that the defendant “has not had a fair and impartial trial.”  Id.;
Saunders v. State, 817 S.W.2d 688,
690 (Tex. Crim. App. 1991).  Under both
standards, we look to the actual degree of harm in light of the entire jury
charge, the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel, and any other relevant information
revealed by the record of the trial as a whole. 
Almanza,
686 S.W.2d at 171.

          Silva
did not object to the charge, which instructed the jury as follows:

An accomplice, as that term is here used,
means anyone connected with the crime charged, as a party thereto, and includes
all persons who are connected with the crime by unlawful act or omission on
their part transpiring either before or during the time of the commission of
the offense, and whether or not they were present and participated in the
commission of the crime.  A person is
criminally responsible as a party to an offense if the offense is committed by
his own conduct, by the conduct of another for which he is criminally
responsible or by both.  Mere presence
alone, however, will not constitute one as a party to an offense.

A person is criminally responsible for an
offense committed by the conduct of another if, acting with intent to promote
or assist the commission of the offense, he solicits, encourages, directs,
aids, or attempts to aid the other person to commit the offense.  The term “conduct” means any act or omission
and its accompanying mental state.

You are instructed that a conviction cannot
be had upon the testimony of an accomplice unless the accomplice’s testimony is
corroborated by other evidence tending to connect the defendant with the
offense charged, and the corroboration is not sufficient if it merely shows the
commission of the offense, but it must tend to connect the defendant with its
commission.  

The witness, Jose Bernal, is an accomplice,
if an offense was committed, and you cannot convict the defendant upon his
testimony unless you further believe that there is other evidence in the case,
outside of the testimony of Jose Bernal tending to connect the defendant with
the offense committed, if you find that an offense was committed, and the
corroboration is not sufficient if it merely shows the commission of the
offense, but it must tend to connect the defendant with its commission, and
then from all of the evidence you must believe beyond a reasonable doubt that
the defendant is guilty of the offense charged against him.

          Silva
does not claim any substantive error either in the abstract definitions or in
the application paragraph of the charge. 
The application paragraph of a jury charge is the part that authorizes
conviction.  McFarland v. State, 928 S.W.2d 482, 515 (Tex. Crim. App. 1996), overruled on other grounds by Mosley v.
State, 983 S.W.2d 249 (Tex. Crim. App. 1998).  When the application paragraph correctly
instructs the jury, a superfluous abstract definition is not harmful.  Medina
v. State, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) (citing Plata v. State, 926 S.W.2d 300, 302–03
(Tex. Crim. App. 1996)); Grady v. State,
614 S.W.2d 830, 831 (Tex. Crim. App. 1981)). 
We therefore hold that any charge error resulting from either any
repetitious language in the order of the abstract definitions did not cause
egregious harm.




 

VI.     Improper Closing Argument

Lastly, Silva contends that the
trial court erred in overruling his objection to the prosecutor’s argument
because it violated his constitutional right to remain silent.  The prosecutor told the jury:

When you go back there, you’re going to have
the charge; and you’re going to do what your common sense tells you to do.  And I’m going to ask you to find the
defendant guilty and I’m going to ask you to find him guilty because he is
guilty and you know that he is guilty. 
You know from all the testimony, you know from all of the things you
heard; you know from his own behavior at that scene when he is profusely
sweating.  He is acting, as the officer
described, more nervous than someone that is just there for a normal traffic
stop.

And how did he react when the officers found
those drugs[?] 
You heard the officer testify.  He
hung his head just like Jose Bernal did. 
You know that if he was not guilty, if he didn’t know those drugs were
in that car, he would have been screaming— 

          The
law is well settled that a prosecutor’s comment to the jury on an accused’s
failure to testify violates the state and federal constitutional privileges
against self-incrimination.  Bird v. State, 527 S.W.2d
891, 893–94 (Tex. Crim. App. 1975).  A prosecutor’s comment amounts to an impermissible
comment on a defendant’s failure to testify only if, when viewed from the jury’s
standpoint, the comment is manifestly intended to be, or is of such character
that a typical jury would naturally and necessarily take it to be, a comment on
the defendant’s failure to testify.  Cruz v. State, 225 S.W.3d 546, 548 (Tex.
Crim. App. 2007); Weed v. State, 129
S.W.3d 126, 130 (Tex. Crim. App. 2004); Bustamante
v. State, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).  In the salient portion of the prosecutor’s
closing argument, the prosecutor referred to Officer Valles’s
testimony that he would have expected Silva to scream or otherwise express
anger and surprise toward Bernal if he was unaware of the stash.  This reference does not relate to Silva’s
failure to say anything in particular; rather, it highlights his reaction to
the cocaine’s discovery.  See Evans,
202 S.W.3d at 162 n.12 (observing that conduct of accused indicating
consciousness of guilt is relevant evidence linking defendant to charged
offense).  Thus, we hold that the trial
court did not abuse its discretion in overruling Silva’s objection to the
prosecutor’s argument.  

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                      Jane
Bland

                                                                      Justice


 

Panel
consists of Justices Keyes, Bland, and Sharp.

Do
not publish.   Tex. R. App. P. 47.2(b).