Lisa Lee **FULENWIDER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–02–00784–CR.

Court of Appeals of Texas, Houston (1st Dist.).

July 15, 2004.

Discretionary Review Refused May 4, 2005.

Ross Palmie, Winston E. Cochran, Jr., Houston, TX, for appellant.

Alan Curry, Assistant District Attorney, William J. Delmore, III, Chief Prosecutor, Appellate Division, Charles A. Rosenthal, Jr., District Attorney–Harris County, Keisha L. Smith, Assistant District Attorney, Houston, TX, for appellee.

Panel consists of Justices NUCHIA, ALCALA, and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

A jury convicted appellant, Lisa Lee Fulenwider, of driving while intoxicated (DWI) and assessed punishment at 180 days' confinement in jail and a $2,000 fine. On the jury's recommendation, the trial court suspended appellant's sentence and placed her on 18 months' community supervision. In three points of error, appellant contends that the trial court erred by (1) admitting retrograde-extrapolation evidence of appellant's alcohol concentration at the time of the offense, (2) refusing to give a jury-charge instruction requiring a unanimous verdict as to which intoxicant, or combination of intoxicants, caused appellant to be intoxicated, and (3) denying challenges for cause on three potential jurors. We affirm.

## Background

On February 12, 2002, appellant and Cecilia Anderson, a co-worker, met at appellant's Galleria-area apartment around 8:00 p.m., with plans to attend a party in downtown Houston. Appellant was drinking a beer when Anderson arrived. The two spent approximately 15 to 20 minutes at the apartment before leaving. Each left in her own car, with Anderson following appellant towards downtown.

Around 8:50 p.m., appellant was involved in an automobile accident at the intersection of Main and Commerce in downtown Houston. Appellant ran a red light and made a left turn in front of an oncoming car driven by Leroy Hayes Jr., who was driving through a green light. Hayes's vehicle collided into the side of appellant's vehicle. Anderson followed though the intersection and pulled over. According to Anderson, Hayes had the right-of-way. Hayes went to appellant's vehicle immediately following the collision and asked to exchange insurance information. Hayes noticed that appellant was slow in responding, fumbled through her glove compartment, and slurred her speech. Hayes also noticed a strong odor of alcohol on appellant's breath. When appellant got out of her car, Hayes claimed that she was tripping over herself.

Within 10 minutes of the accident, both Metropolitan Transit Authority (Metro) and Houston Police Department (HPD) officers arrived on the scene. According to one of the Metro officers, appellant admitted that she had been drinking. A Metro police officer inventoried appellant's car and did not find any alcoholic beverages in the vehicle. An HPD officer noticed that appellant had a strong odor of an alcoholic beverage, slurred speech, and poor balance. The HPD officer asked appellant if she had been drinking, and appellant told him that she had consumed one beer, but admitted that she did not know the time of either her first or last drink. The HPD officer administered the horizontal gaze nystagmus (HGN) test, in which appellant exhibited all six clues indicating intoxication. The HPD officer also testified that appellant performed "very badly" on the one-leg stand test, using her arm once, hopping on her foot twice, and dropping her foot once. Based on appellant's performance on the two field-sobriety tests, the HPD officer formed the opinion that appellant had lost the normal use of her mental and physical faculties by reason of the introduction of alcohol into her body.

Appellant was arrested for DWI and taken to the police station, where she took an Intoxylizer test. The Intoxylizer operator noticed that appellant had a strong odor of alcohol on her breath, glassy and bloodshot eyes, and "thick-tonged" speech. The alcohol concentration[1] results from appellant's two breath samples were a .163 at 10:39 p.m. and a .159 at 10:42 p.m. Appellant told the HPD officer that she was taking the prescription anti-depressant Zoloft.[2] Appellant was found in possession of two Zoloft tablets, two Lorazep-am tablets, six lithium carbonate tablets, and a capsule identified as Diovan.

Appellant also performed field-sobriety tests on videotape. She swayed during the one-leg stand test. During the walk-and-turn test, appellant exhibited two clues—an improper turn and a missed heel-to-toe maneuver. Appellant performed normally for a sober person on the Rhomberg test and "did all right" on the finger-to-nose test.

### Retrograde Extrapolation Evidence

In her first point of error, appellant contends that the trial court committed harmful, reversible error by admitting retrograde-extrapolation evidence of her alcohol concentration at the time of the offense. Specifically, appellant claims that the State's expert lacked sufficient facts upon which to base her retrograde extrapolation.

We review a trial court's decision to admit or to exclude evidence under an abuse-of-discretion standard and will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Torres v. State*, 71 S.W.3d 758, 760 (Tex.Crim.App.2002).

Retrograde extrapolation is the technique by which alcohol concentration at some earlier time is estimated based on the results of testing at a later time. *Mata v. State*, 46 S.W.3d 902, 908–09 (Tex. Crim.App.2001). In *Mata*, the Court of Criminal Appeals concluded that the science of retrograde extrapolation may be reliable under the facts of a given case. *Id.* at 916. The retrograde-extrapolation expert's ability to apply the science and

---

**1.** "Alcohol concentration" means the number of grams of alcohol per 210 liters of breath, 100 milliliters of blood, or 67 milliliters of urine. Tex. Pen.Code Ann. § 49.01(1) (Vernon 2003).

**2.** Zoloft is the trade name of the drug Sertra-line. It is an anti-depressant prescribed as a mood elevator.

explain it with clarity to the court is a paramount consideration. *Id.* The expert must show some understanding of the difficulties associated with retrograde extrapolation, as well as an awareness of the subtleties of the science and the risks inherent in any extrapolation. *Id.* Finally, the expert must be able to apply the science clearly and consistently. *Id.*

■■■ In evaluating the reliability of retrograde-extrapolation evidence, a reviewing court considers (1) the length of time between the offense and the administration of the test(s), (2) the number of tests given and the interval between each, and (3) to what extent, if any, the individual characteristics of the defendant were known to the expert in providing his extrapolation. *Id.* These characteristics and behaviors might include, but are not limited to, the person's weight and gender, the person's typical drinking pattern and tolerance for alcohol, how much alcohol the person consumed on the day or night in question, what the person drank, the duration of the drinking spree, the time of the last alcoholic drink, and how much and what the person had to eat, either before, during, or after the consumption of alcohol. *Id.*

■■■ The expert need not know every personal fact about the defendant to produce an extrapolation with the appropriate level of reliability. *Id.* If this were the case, no valid extrapolation could ever occur without the defendant's cooperation, given that a number of facts known only to the defendant are essential to the process. *Id.* The Court of Criminal Appeals has stated that if more than one test is administered at reasonable intervals, and the first test is conducted within a reasonable time of the offense, then an expert could potentially create a reliable estimate of the defendant's alcohol concentration with limited knowledge of personal characteristics

and behaviors. *Id.* In contrast, a single test conducted some time after the offense could result in a reliable extrapolation only if the expert had knowledge of many personal characteristics and behaviors of the defendant. *Id.* A case would "fall in the middle" if the expert is made aware of two or three of the defendant's personal characteristics and a single test was administered to the defendant within a reasonable length of time from the offense. *Id.* at 916–17. The Court of Criminal Appeals has suggested that a reasonable interval between the offense and the test is less than one hour. *Id.* at 912 (explaining that scientific study indicates that potential rate of error increases as time passes and "was particularly large when extrapolating back one hour or more was attempted").

■■■ The Intoxilyzer test was administered to appellant approximately one hour and fifty minutes after the offense. Thus, there was not a reasonable interval between the offense and the test. *See id.* Additionally, although appellant blew into the Intoxilyzer twice, appellant's two breath samples constituted a single test for *Mata* purposes because of the short time interval of only a few minutes between the two breath samples. *See Douthitt v. State,* 127 S.W.3d 327, 334 n. 1 (Tex.App.-Austin 2004, no pet.). Therefore, in order for the State's expert's extrapolation to have been reliable, the expert would have needed to know many of appellant's personal characteristics and behaviors. *See Mata,* 46 S.W.3d at 916.

Deborah Stephens testified as an expert on behalf of the State. Stephens, an employee of the Austin Police Department Crime Laboratory, had been employed by HPD at the time of appellant's arrest. Stephens worked for HPD as a forensic chemist assigned to the toxicology section of the laboratory and was also certified as a technical supervisor in charge of the

breath-testing program for the City of Houston. Stephens stated that, twice weekly, she would verify that the city's Intoxilyzer equipment was both calibrated and functioning properly. She testified that, on February 12, 2002, the Intoxilyzer 5000 that was used to test appellant's breath was, in her opinion, calibrated and functioning properly.[3]

Stephens knew the following personal characteristics and behaviors regarding appellant: (1) appellant was female; (2) appellant weighed 135 pounds and was 5'4" tall; (3) appellant's last meal had been a sandwich, eaten around noon, (4) the time of appellant's offense was 8:50 p.m., and (5) the time of appellant's breath tests were 10:39 p.m., with a result of .163, and 10:42 p.m., with a result of .159. During the suppression hearing, Stephens testified that she did not know appellant's normal drinking patterns or when appellant had her last drink. She further stated that the most important information needed to extrapolate properly is the amount of time transpired between the offense and the breath test and, after that, the time of the last drink.

Appellant contends that the facts that Stevens had were insufficient to render a reliable retrograde extrapolation. In *Bhakta v. State,* 124 S.W.3d 738 (Tex.App.-Houston [1st Dist.] 2003, pet. struck), we considered whether a testifying expert had sufficient factual basis upon which to form a reliable retrograde extrapolation. In *Bhakta,* the breath test was performed on the defendant over an hour and a half after the offense, beyond the reasonable time-frame established in *Mata. Bhakta,* 124 S.W.3d at 742 (citing *Mata,* 46 S.W.3d

at 916). As in this case, the expert in *Bhakta* knew the defendant's gender, height, weight, the last meal that the defendant had eaten prior to the offense and the time that he ate it, the time of the offense, the time of the breath test, and the breath test results. *Bhakta,* 124 S.W.3d at 742. The defendant in *Bhakta,* however, stipulated as to the time of his last drink prior to the offense. *Id.* We held that the testifying expert in *Bhakta* knew a sufficient number of the defendant's personal characteristics for the expert's extrapolation to be reliable *Id.* Thus, the difference between this case and *Bhakta* is Stephens's lack of knowledge of the time of appellant's last drink.

During its case-in-chief, the State asked Stephens to extrapolate hypothetically an alcohol concentration for a female weighing 135 pounds and 5'4" tall, who last ate a sandwich at noon, who was last seen driving at 8:50 p.m., who blew a .163 at 10:39 p.m. and a .159 at 10:42 p.m., and who did not drink alcohol between 8:50 p.m. and 10:42 p.m. The State further asked Stephens to assume that this hypothetical female was eliminating, rather than absorbing, alcohol.[4] On appellant's voir dire examination, Stephens explained that, in order for this hypothetical female to blow a .163 at 10:39 p.m. and a .159 at 10:42 p.m. and to be eliminating, rather than absorbing, alcohol at 8:50 p.m., that person would have had to have stopped drinking 30 minutes prior to the offense, at 8:50 p.m. Stephens then testified that, based on this hypothetical, and assuming the had person stopped drinking 30 minutes prior to the offense, the person would

---

3. The trial court took judicial notice of Stephens's qualifications as an expert in rendering retrograde-extrapolation opinions during the motion-to-suppress hearing outside the presence of the jury.

4. Stephens testified that if two hours had transpired between appellant's last drink and the breath test, "[appellant] was certainly in elimination. She would no longer be absorbing alcohol."

have had an alcohol concentration raging from .18 to .19 at the time of the offense.[5] In order to achieve such a concentration, Stephens explained, the person would have had to have had 10 to 12 drinks.

Although Stephens did not directly know when appellant had consumed her last drink, we conclude that she did have sufficient basis upon which to determine that appellant had imbibed her last drink at least 30 minutes prior to the offense, at 8:50 p.m. Cecilia Anderson testified that she met appellant at appellant's apartment prior to their going downtown to attend a party. Anderson stated that she arrived at appellant's apartment around 8:00 p.m. that evening and that, when she arrived, appellant was still preparing to leave and that appellant was drinking a beer. Anderson stated that she and appellant were at the apartment for about 15 to 20 minutes prior to leaving for the party. Anderson did not see appellant take any alcoholic beverages with her when the two left the apartment. However, on cross-examination, Anderson testified that she recalled only a comment from appellant, stating that appellant would like to have a beer, and that she did not specifically recall seeing appellant opening or holding a beer. Anderson also testified on cross-examination that she did not specifically recall whether she saw appellant take a beer with her when they left the apartment to travel downtown in their separate cars. From Anderson's testimony, even if appellant drank a beer at her apartment before leaving her apartment at 8:20 p.m., appellant would not have consumed any alcohol for the 30-minute interval before her accident at 8:50 p.m., unless she had been drinking in her car. The HPD officer's testimony established that no alcohol

or alcohol containers were found in appellant's car after her arrest.

■■■ Appellant claimed that Anderson's testimony did not establish the time of appellant's last drink, but the trial court found otherwise. In a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990); *Whisenhunt v. State*, 122 S.W.3d 295, 298 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). The trial court may accept or reject all or any part of a witness's testimony. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex.Crim.App.1980); *Whisenhunt*, 122 S.W.3d at 298. Prior to ruling, the trial court stated on the record that it found credible Anderson's testimony that she saw appellant with a beer when she arrived and did not see appellant take any alcoholic beverages with her when they left and that it rejected Anderson's testimony that she was not certain whether she saw appellant with a beer at the apartment or taking an alcoholic beverage with her in the automobile.

Because there was evidence supporting the trial court's finding that Anderson's testimony established the time of appellant's last drink, we conclude that Stephens had sufficient information available upon which to extrapolate appellant's alcohol concentration at the time of the offense reliably. *See Mata*, 46 S.W.3d at 916; *Bhakta*, 124 S.W.3d at 742. We hold that Stephens's extrapolation was sufficiently reliable to be useful to the jury and, therefore, that the trial court did not abuse its discretion in admitting the extrapolation evidence. *See Mata*, 46 S.W.3d at 916; *see also* Tex.R. Evid. 702.

**5.** The State posed a similar hypothetical during the pre-trial suppressing hearing, at which Stephens testified that the alcohol concentration at the time of driving would have been between .17 and .18.

We overrule appellant's first point of error.

## Disjunctive Jury Charge

In her second point of error, appellant contends that the trial court erred by permitting the jury to return a non-unanimous verdict as to which intoxicant, or combination of intoxicants, caused appellant to be intoxicated.

As a threshold matter, the State responds that appellant has waived review because her objection at trial does not comport with her point of error on appeal. *See* Tex.R.App. P. 33.1. We address the State's contention within the context of the standard of review that controls claims of jury-charge errors.

■■■■ When reviewing charge errors, an appellate court must undertake a two-step review: first, the court must determine whether error actually exists in the charge; second, if the court finds error, it must determine whether sufficient harm resulted from the error to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex.Crim.App.1994); *Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App.1986); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). The standard to determine whether sufficient harm resulted from the charging error to require reversal depends upon whether appellant objected at trial. *Abdnor*, 871 S.W.2d at 732. When there has been a timely objection made at trial, an appellate court will search only for "some harm." *Id.* By contrast, when the error is urged for the first time on appeal, a reviewing court will search for egregious harm. *Id.* Thus, even if appellant's complaint on appeal differs from her objection at trial, we will still review the charge for error, but will reverse only if appellant has demonstrated

"egregious harm" from the error. *See Abdnor*, 871 S.W.2d at 731–32; *Arline*, 721 S.W.2d at 351; *Almanza*, 686 S.W.2d at 171.

■■■■ A person commits the offense of DWI if the person is intoxicated while operating a motor vehicle in a public place. Tex. Pen.Code Ann. § 49.04(a) (Vernon 2003). A person is intoxicated when he loses the normal use of his mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body. Tex. Pen.Code Ann. § 49.01(2)(A) (Vernon 2003). Alternatively, a person is intoxicated when he has an alcohol concentration of 0.08 or more. Tex. Pen.Code. Ann. § 49.01(2)(B) (Vernon 2003).[6] These two definitions of intoxication set forth alternate means by which the State may prove intoxication, rather than alternate means of committing the offense. *Bagheri v. State*, 119 S.W.3d 755, 762 (Tex.Crim.App.2003); *see also Ex parte Crenshaw*, 25 S.W.3d 761, 766 (Tex. App–Houston [1st Dist.] 2000, pet. ref'd) (holding alternate definitions of intoxication do not set forth separate and distinct offenses). The conduct proscribed by the Penal Code is the act of driving while in a state of intoxication. *Bagheri*, 119 S.W.3d at 766. Therefore, the State may use either the loss-of-normal-use definition or the per se definition to prove the offense. *Id.*

The charge to the jury instructed that appellant should be found guilty of DWI if the jury found beyond a reasonable doubt that appellant operated a motor vehicle in a public place while intoxicated in any of the following ways:

1. not having the normal use of his [sic] mental or physical faculties by the

---

**6.** This definition of intoxication is commonly referred to as the "per se" definition.

reason of the introduction of alcohol into his [sic] body;

2. OR ... having an alcohol concentration of at least 0.08 in his [sic] breath;

3. OR ... not having the normal use of her mental or physical faculties by the reason of the introduction of a drug, namely, Sertraline into her body;

4. OR ... not having the normal use of her mental or physical faculties by reason of the introduction of a combination of alcohol and a drug, namely Sertraline, into her body....

The verdict form provided the jury with two options: the jury could find appellant guilty of DWI or could find appellant not guilty. Appellant contends that the trial court's instructions failed to require a unanimous verdict because some of the jurors may have believed that appellant was intoxicated by reason of the introduction of alcohol, others may have believed that appellant was intoxicated by reason of the introduction of Sertraline, and still others may have believed that appellant was intoxicated by reason of the introduction of a combination of alcohol and Sertraline.

■ A trial court errs when it charges the jury disjunctively on separate *offenses* and permits the jury to return a single, general verdict of guilty. *Francis v. State*, 36 S.W.3d 121, 125 (Tex.Crim.App.2000); *Hisey v. State*, 129 S.W.3d 649, 652 (Tex. App–Houston [1st Dist.] 2004, pet. filed). In *Hisey*, the trial court's charge allowed the jury to convict Hisey of a single murder, regardless of whether the jury believed that he killed his mother, his father, or both parents. *Id.* at 651–52. We concluded that because the murder of the defendant's mother was one offense, and the murder of the defendant's father was a *separate* offense, the jury charge permit-

ting conviction for murder if the defendant committed *either* offense allowed for the possibility of a non-unanimous jury verdict of murder. *Id.* We concluded that the defendant had suffered egregious harm as a result of the erroneous, disjunctive jury charge because the lack of a clear, unanimous verdict deprived the defendant of his rights to trial by jury and of a fair and impartial trial. *Id.* at 659.

■ Appellant asserts that the disjunctive jury charge in her case is similar to the charge that we concluded was erroneous in *Hisey* and that, as a result, she was deprived of a unanimous jury verdict. We disagree. The charge in *Hisey* instructed the jury to return a general, single verdict of guilty if the jury found beyond a reasonable doubt the defendant had committed any of three *separate offenses*, whereas the charge in appellant's case instructed the jury to return a general, single verdict of guilty if the jury found beyond a reasonable doubt that appellant had committed a *single offense* of DWI and was intoxicated by any of four separate means.

■ It is appropriate, when alternate theories of committing the same offense are submitted to the jury in the disjunctive, for the jury to return a general verdict of guilty if the evidence is sufficient to support a finding under any of the theories submitted. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App.1991). A jury need not agree on the preliminary issues that underlie the verdict. *Id.*

We conclude that because appellant was charged with a single offense of DWI, the trial court did not err by charging the jury disjunctively on the means of intoxication. *See id.* Consequently, there was no requirement that the jury return a verdict indicating which intoxicant, or combination of intoxicants, caused appellant to be intoxicated.

We overrule appellant's second point of error.

## Challenges for Cause

In her third point of error, appellant contends that the trial court erred by denying her challenges for cause to jurors Wilson, Rowan, and Godinez. The State responds that appellant has not preserved error for review.

■ To preserve error with respect to a trial court's denial of a challenge for cause, an appellant must (1) assert a clear and specific challenge for cause, (2) use a peremptory strike on the complained-of veniremember, (3) exhaust his peremptory strikes, (4) request additional peremptory strikes, (5) identify an objectionable juror, and (6) claim that he would have struck the objectionable juror with a peremptory strike if he had had a strike to use. *Allen v. State*, 108 S.W.3d 281, 282 (Tex.Crim. App.2003).

■ The record in this case does not reveal that appellant challenged for cause juror Rowan. Therefore, appellant preserved no error with regard to juror Rowan. *See id.* Appellant did challenge for cause jurors Wilson and Godinez. However, appellant did not exercise peremptory strikes against either juror Wilson or Godinez. Because appellant did not exercise peremptory strikes against jurors Wilson or Godinez, she did not preserve error for review. *See id.*

We overrule appellant's third point of error.

## Conclusion

We affirm the judgment of the trial court.