**Opinion issued October 4, 2012**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

## NO. 01-11-00192-CR

_____

**CHRISTOPHER JOHNSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1171238**

---

## MEMORANDUM OPINION

A jury convicted Christopher Johnson of the felony offense of capital

murder,[1] and the trial court sentenced him to the mandatory life without parole. In two issues, appellant contends that (1) the trial court erred in denying his timely request for a jury instruction on the lesser-included offense of murder and (2) the trial court erroneously denied two valid challenges for cause, forcing him to use peremptory strikes on those prospective jurors when other objectionable prospective jurors were identified. We affirm.

## BACKGROUND

Appellant and the complainant, Carvillia Evans, were involved in an on-again/off-again relationship for several years. After Evans became pregnant with appellant's child in 2007, appellant moved into the apartment Evans shared with her parents. Evans's mother testified that appellant's name was not on the lease, and that, as far as she knew, he did not have a key to the apartment.

On December 20, 2007, Evans kicked appellant out of her parents' apartment and he was no longer allowed to live there. That same night, appellant returned demanding his belongings and threatening to harm Evans. When neither Evans nor her parents would open the front door for him, appellant broke into the apartment through Evans's bedroom window, and threatened Evans's father with a kitchen knife. Although appellant was briefly allowed to sleep over at the

---

[1] TEX. PENAL CODE ANN. § 19.03(a)(2) (West 2011). The charge averred that appellant committed murder in the course of committing, or attempting to commit, burglary of a habitation.

2

apartment a few nights following the birth of their daughter in March 2008, he was never allowed to live in the apartment again.[2]

Once expelled from the apartment, however, appellant began harassing Evans and sending her threatening text messages. In the weeks leading up to her death, Evans received nearly four dozen text messages from appellant's cell phone, many of which indicated that he was going to kill her (i.e., "be ready for a early death Believe in Jesus," "If u [have sex with] some one I will kill u Believe in Jesus.") Evans did not call appellant, nor did she answer any of his twenty-nine calls to her cell phone.

On June 5, 2008, appellant went to the apartment asking to see Evans and their daughter and telling Evans that he meant her no harm. Not surprisingly, given appellant's prior text messages, including one that very day stating "U got urs coming dont come outside," Evans refused to open the door. After sending Evans several more threatening text messages, appellant returned to the apartment three days later, asking to see his daughter. Again, Evans refused to let appellant into the apartment. This time, appellant responded by attempting to kick down the front door. The police were called on both occasions.

The next week, on Father's Day—June 15, 2008—appellant sent Evans twenty-six text messages insisting on seeing his daughter, the substance and tone

---

[2]     Evans's mother testified that appellant was not allowed to stay over at the apartment "after the rodeo."

3

of which clearly indicated that Evans was refusing his repeated entreaties and that he was not welcome at the apartment. Appellant, nevertheless, came by the apartment with his girlfriend that morning and although Evans spoke with him briefly at the front door, he was never allowed into the apartment.

Appellant thereafter called Gerard Brown, an acquaintance, complaining that he had just spoken with his "baby mama" and she was refusing to allow him to see his child on Father's Day. According to Brown, appellant was angry and upset. Appellant told Brown that he was tired of his "baby mama" and he was going to kill her.

Evans's mother arrived home from work that evening to find Evans stabbed to death, lying on her bedroom floor, and the baby missing. She immediately suspected appellant, exclaiming, "Oh, my God, he done killed my baby." According to Evans's mother, the front door of the apartment was locked when she arrived, but the blinds covering the window leading to the patio were in disarray and some papers under the window had been knocked to the ground.

After he killed Evans, appellant called Brown, and calmly reported, "I just killed my baby mama. Can I come through?" Appellant took Evans's car keys and drove himself and his daughter across town to Brown's house. When he arrived, Brown noticed that appellant's shoes were covered in blood and the baby, asleep in her baby carrier, was sitting in a pool of blood and had blood on her

4

socks. After he threw his bloody garments into Brown's trashcan, appellant described to Brown part of what had transpired—"he jumped over the patio and got inside the house and was waiting on whoever was to come home first, the mom or the daughter, and he was going to kill whichever one came in first." Brown testified that appellant described in detail how he stabbed Evans, cut her throat, and continued stabbing her in the presence of their daughter. Evans's autopsy revealed that she died from a total of twenty-two stab wounds.

## DISCUSSION

### I. Denial of lesser-included-offense instruction

Appellant asserts that the trial court erroneously denied his request for a jury instruction on the lesser-included offense of murder. The requested instruction by the defense on the lesser-included offense was proffered on the grounds that the "jury may interpret that [appellant] came in consensually on Father's Day, the stabbing took place, he kills her, and then leaves out through the back window." The trial court denied this instruction for lack of evidence of consent to enter the apartment.

The determination of whether a defendant is entitled to the requested lesser-included-offense instruction is made pursuant to a two-part test. An offense is a lesser-included offense if "it is established by proof of the same or less than all

5

the facts required to establish the commission of the offense charged." TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006).

The second prong of the test is satisfied if there is some evidence in the record that would permit a rational jury to find that "if the defendant is guilty, he is guilty *only* of the lesser offense." *Guzman v. State*, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006); *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993). There must be some evidence from which a rational jury could acquit the defendant of the greater offense, while convicting him of the lesser-included offense. *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). The evidence must establish the lesser-included offense as a "valid rational alternative to the charged offense." *Id.* at 68 (quoting *Segundo v. State*, 270 S.W.3d 79, 91 (Tex. Crim. App. 2008)).

In determining whether appellant is entitled to a lesser-included-offense instruction, we review all of the evidence presented at trial. *Sweed*, 351 S.W.3d at 68. The court may not consider the credibility of the evidence or whether it is controverted or in conflict with other evidence. *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). If the evidence raises the issue of a lesser-included offense, the charge must be given. *Rousseau*, 855 S.W.2d at 672.

Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser-included-offense charge. *Sweed*, 351 S.W.3d at 68. Mere disbelief of

crucial evidence for the greater offense is not enough; there must be some affirmative evidence "directly germane" to the lesser-included offense for the fact-finder to consider before an instruction on a lesser-included offense is warranted. *Id*.; *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003), *abrogated on other grounds by Grey v. State*, 298 S.W.3d 644 (Tex. Crim. App. 2009).

Because the State concedes that murder is a lesser-included offense of capital murder as alleged in the indictment, we will address only the second step of the test by examining whether the evidence would allow a rational jury to find, if appellant was guilty, that he was guilty only of murder. *See Guzman*, 188 S.W.3d at 188–89. The indictment asserted that appellant, in the course of committing burglary, intentionally caused the death of Evans. For appellant to be guilty only of murder, the jury would have to find that he stabbed Evans, but did not commit the predicate felony of burglary. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (West 2011) (defining capital murder to include murder in course of committing burglary). Appellant contends that he was entitled to an instruction on murder because a jury could have believed that he was not guilty of burglary because he had permission to enter the apartment.

After reviewing the entire record, we find no affirmative evidence directly germane to consensual entry. At most, our review of the record shows that (1)

7

Evans was killed on Father's Day, (2) there was no forced entry at the front door which was locked when Evans's mother returned home and discovered the body, (3) appellant used to live in the apartment with Evans and her parents, and (4) appellant repeatedly asked to see his daughter on Father's Day. Such facts as these amount to less than a scintilla of evidence and are insufficient to entitle appellant to the instruction. *See Sweed*, 351 S.W.3d at 68 (stating that defendant is only entitled to lesser-included-offense instruction if there is more than scintilla of evidence raising such offense). Accordingly, we hold that the trial court did not err in denying appellant's request for a lesser-included-offense instruction.

We overrule appellant's first issue.

## II. Denial of challenges for cause

In his second issue, appellant asserts that the trial court erroneously denied two valid challenges for cause. A challenge for cause may be made if the prospective juror has a bias or prejudice in favor of or against the defendant. TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9) (West 2006). The defense may make a challenge for cause if the prospective juror has a "bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely." TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2) (West 2006).

To preserve the challenge for appellate review, an appellant must: (1) assert a clear and specific challenge for cause, (2) use a peremptory strike on the

prospective juror, (3) exhaust his peremptory strikes, (4) request additional peremptory strikes, (5) identify an objectionable juror, and (6) claim that he would have struck the objectionable juror with a peremptory strike if he had a strike to use. *Allen v. State*, 108 S.W.3d 281, 282 (Tex. Crim. App. 2003); *Fulenwider v. State*, 176 S.W.3d 290, 300 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd).

Here, appellant challenged prospective juror Number 5 and Number 18 for cause. The trial court denied both his challenges and his request for two additional peremptory strikes. Appellant used peremptory strikes on both Number 5 and Number 18 and exhausted his peremptory strikes. Appellant identified the two objectionable jurors that he would have struck, had he been given two additional peremptory strikes.

We review a trial court's decisions on such challenges in light of the voir dire as a whole. *Swearingen v. State*, 101 S.W.3d 89, 99 (Tex. Crim. App. 2003). Since the trial court is in the best position to evaluate a prospective juror's demeanor and responses, our review gives considerable deference to the trial court's ruling. *Newbury v. State*, 135 S.W.3d 22, 32 (Tex. Crim. App. 2004). Only if a clear abuse of discretion is evident will we reverse a trial court's ruling on a challenge for cause. *Gonzales v. State*, 353 S.W.3d 826, 831 (Tex. Crim. App. 2011). Where a prospective juror's answers are vacillating, unclear, or contradictory, the reviewing court is bound by the trial court's judgment in the

9

matter. *See Colburn v. State*, 966 S.W.2d 511, 517 (Tex. Crim. App. 1998); *Brown v. State*, 913 S.W.2d 577, 580-81 (Tex. Crim. App. 1996).

## A. Number 5

Appellant challenged prospective juror Number 5 on the grounds that she expressed bias against him. Number 5 stated when confronted with a situation in which a male and female were fighting, she "would side with the girl because most of the time . . . girls are weaker." After the trial court explained the law to her, Number 5 agreed to follow the law and find appellant not guilty if the State failed to prove its case beyond a reasonable doubt, regardless of the parties' gender. Upon further questioning by the defense, Number 5 said that she was leaning "in a way" in favor of the female victim, but she would "have to have the evidence to say" and would need to know the circumstances. Number 5 gave vacillating and unclear answers, but indicated an inclination to follow the law and assess the evidence presented to her. As such, we defer to the trial court's ruling. *See Colburn*, 966 S.W.2d at 517. Accordingly, we hold that the trial court did not err in denying appellant's challenge for cause as to prospective juror Number 5.

## B. Number 18

Appellant challenged prospective juror Number 18 on the grounds that she expressed bias against the law. For challenges based on a prospective juror's bias against the law, we must determine whether the prospective juror's beliefs would

prevent or substantially impair her from following the law as set out in the trial court's charge and as required by the juror's oath. *Swearingen*, 101 S.W.3d at 99. For this challenge for cause to be proper, the appellant must show that the prospective juror understood the requirements of the law and could not overcome her prejudice well enough to follow the law. *See Gonzales*, 353 S.W.3d at 832. Before a prospective juror may be excused for cause on this basis, the law must be explained to her, and she must be asked whether she can follow that law regardless of her personal views. *Id.* at 832.

Appellant argues that Number 18 expressed a bias against his Fifth Amendment right not to testify. Specifically, appellant points to Number 18's statement that a defendant might not want to testify because, "They got people that can look at you and still don't tell the truth."[3] When asked if she would hold a defendant's failure to testify against him, Number 18 stated that she would want the defendant to testify. After the trial court explained the law regarding the Fifth Amendment to her, however, Number 18 stated that she would be able to follow the law and would not hold appellant's failure to testify against him. Since Number 18's answers were vacillating, we defer to the trial court's ruling on the matter. *See Colburn*, 966 S.W.2d at 517. Accordingly, we hold that the trial court

---

[3]     Both appellant and the State also attribute the statement "They are professional liars" to Number 18. However, the record reveals that another prospective juror, Number 11, made that statement. Number 11 was struck for cause by agreement.

11

did not err in denying appellant's challenge for cause as to prospective juror Number 18.

We overrule appellant's second issue.

## CONCLUSION

We affirm the judgment of the trial court.

Jim Sharp
Justice

Panel consists of Justices Jennings, Higley, and Sharp.

Do not publish.   TEX. R. APP. P. 47.2(b).