Kem Thompson Frost, Chief Justice *267 Convicted of driving while intoxicated, appellant Eric Joseph Corley challenges the trial court's admission of retrograde-extrapolation evidence of his blood-alcohol content. Concluding that the trial court reasonably could have determined that the retrograde-extrapolation evidence was reliable, we overrule the challenge and affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Officer Joseph Little stopped appellant for speeding (91 miles per hour) while weaving through interstate traffic in the dark. It was 9:57 p.m. After Officer Little smelled alcohol and noticed appellant's eyes were glassy, he gave appellant three standard field-sobriety tests and saw clues of intoxication on each test. Appellant told Officer Little that on a scale of one to ten, with one being sober and ten being highly intoxicated, appellant would rate himself as a two or three.
Officer Little arrested appellant and took him to the police station. There, appellant took two Breathalyzer tests. The first test result, at 10:59 p.m., registered at .109; the second, at 11:02 p.m., came in at .110.
Charged with driving while intoxicated, appellant pleaded "not guilty." During the jury trial that followed, Officer Little described his roadside encounter with appellant. Expert witness Tasha Israel then opined that based on appellant's breath-test results, appellant was intoxicated at the time of the stop.
Before Israel testified, appellant moved to exclude her testimony, asserting it was unreliable because Israel did not have enough information to perform a reliable retrograde extrapolation. After conducting a hearing outside of the presence of the jury, the trial court denied appellant's motion.
The jury found appellant guilty as charged. The trial court assessed punishment at 180 days' confinement, but suspended the sentence and placed appellant on community supervision for one year.
Appellant urges a single point on appeal: The trial court abused its discretion in admitting the expert's retrograde-extrapolation testimony because it was unreliable.
ANALYSIS
We review a trial court's admission of evidence for an abuse of discretion. Willover v. State , 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). Under an abuse-of-discretion standard, we will not disturb the trial court's decision if the ruling falls within the zone of reasonable disagreement. Tillman v. State , 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).
Reliability of retrograde-extrapolation evidence
An expert witness may testify as to the expert's opinion based on scientific knowledge if it will help the trier of fact understand the evidence or determine a fact in issue. Tex. R. Evid. 702. To show that the expert's opinion would be helpful, the party offering the scientific proof, among other things, must demonstrate by clear and convincing evidence that the proof is reliable.
*268 Jackson v. State , 17 S.W.3d 664, 670 (Tex. Crim. App. 2000). Reliability may be established by showing (1) the validity of the underlying scientific theory, (2) the validity of the technique applying the theory, and (3) the proper application of the technique on the occasion in question. Kelly v. State , 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).
Retrograde extrapolation is the process of computing a person's blood-alcohol level at the time of driving based on the alcohol level found in the person's blood, drawn some time later. Mata v. State , 46 S.W.3d 902, 908-09 (Tex. Crim. App. 2001). Retrograde-extrapolation testimony can be reliable if certain factors are known. Veliz v. State , 474 S.W.3d 354, 359 (Tex. App.-Houston [14th Dist.] 2015, pet. ref'd). A paramount consideration is the expert's ability to apply the science and explain it with clarity. Mata , 46 S.W.3d at 916. The expert must demonstrate some understanding of the difficulties associated with a retrograde extrapolation and must recognize the subtleties of the science and the risks inherent in any retrograde extrapolation. Id. The expert also must be able to apply the science clearly and consistently. Id.
In assessing the reliability of retrograde-extrapolation evidence, courts must consider:
• (a) the length of time between the offense and the test(s) administered;
• (b) the number of tests given and the length of time between each test; and
• (c) whether, and if so, to what extent, any individual characteristics of the defendant were known to the expert in providing the extrapolation.
Id. Relevant personal characteristics may include (1) weight, (2) gender, (3) the person's typical drinking pattern and tolerance for alcohol, (4) how much alcohol the person had to drink on the occasion in question, (5) what the person drank, (6) the duration of the drinking, (7) the time of the last drink, and (8) how much and what food the person consumed before, during, and after the drinking. Id. The expert need not know every one of these data points to produce a reliable extrapolation. Id. at 916-17. Otherwise, "no valid extrapolation could ever occur without the defendant's cooperation, since a number of facts known only to the defendant are essential to the process." Id. at 916. Thus, this court must employ a balancing test with the applicable factors to determine if the trial court abused its discretion. Id. at 917. The Court of Criminal Appeals has set forth the following guidelines for balancing the factors:
If the State conducts more than one test, each test a reasonable length of time apart, and the first test [was] conducted within a reasonable time from the time of the offense, then an expert could potentially create a reliable estimate of the defendant's [blood-alcohol content] with limited knowledge of personal characteristics and behaviors. In contrast, a single test conducted some time after the offense could result in a reliable extrapolation only if the expert had knowledge of many personal characteristics and behaviors of the defendant. Somewhere in the middle might fall a case in which there was a single test a reasonable length of time from the driving, and two or three personal characteristics of the defendant were known to the expert.
Id. at 916-17. Appellate courts consider and weigh the factors along this continuum to determine whether the trial court abused its discretion in admitting or excluding evidence. Veliz , 474 S.W.3d at 359.
*269 Hearing on appellant's motion to exclude evidence
In the hearing outside the presence of the jury, Israel stated she knew the following variables:
• the time of the stop,
• the time of the first drink,
• the time of the last drink,
• the amount and type of alcohol,
• the time of each breath test,
• the result of each breath test, and
• the time appellant last ate food.
Relying on appellant's statement that he had consumed a single, sixteen-ounce beer before 9:00 p.m., Israel based her retrograde-extrapolation testimony on appellant's consumption of his first and last drink at 9:00 p.m. Appellant asked Israel if she could perform the analysis without knowing the time of the last drink. Israel said she could not. Appellant argued that Israel did not know the time appellant finished his last drink and moved to exclude Israel's testimony on this basis. The trial court asked Israel if she needed to know the time of the last drink or the last moment of consumption. Israel said, "we define it as last drink." The trial court denied appellant's motion.
Analysis of the factors
Time between tests and number of tests
Approximately one hour elapsed between the traffic stop and the breath tests. The longer the period between the traffic stop and the breath test, the less reliable retrograde extrapolation will be. See Bhakta v. State , 124 S.W.3d 738, 742 (Tex. App.-Houston [1st Dist.] 2003, pet. ref'd). More than two hours after the offense is an unreasonable amount of time. See Bigon v. State , 252 S.W.3d 360, 368 (Tex. Crim. App. 2008) (noting "research indicates that a blood test can be reliable if taken within two hours of driving"); Mata , 46 S.W.3d at 916-17 (concluding that testing blood-alcohol concentration more than two hours after the alleged offense seriously affects the reliability of any extrapolation); Fulenwider v. State , 176 S.W.3d 290, 295 (Tex. App.-Houston [1st Dist.] 2004, pet. ref'd). Although the police conducted two breath tests, because the tests were only a few minutes apart, the reliability is more akin to situations in which only one test was conducted. See Owens v. State , 135 S.W.3d 302, 308 (Tex. App.-Houston [14th Dist.] 2004, no pet.). Because the two tests were close together in time and an hour from the traffic stop, Israel needed to know some of appellant's personal characteristics to reliably extrapolate his blood-alcohol content at the time he was driving based on the results of the breath tests. Mata , 46 S.W.3d at 916-17.
Variables used by the expert
Israel described the process of retrograde extrapolation and testified that she could extrapolate appellant's blood-alcohol content based on the following information:
• Before the traffic stop, appellant had last eaten at 2:00 p.m.
• Appellant had his first alcoholic drink at 9:00 p.m.
• Appellant had his last alcoholic drink at 9:00 p.m.
• The police traffic stop occurred at 9:57 p.m.
• The first breath test showed a reading of .109 at 10:59 p.m.
• The second breath test showed a reading of .110 at 11:02 p.m.
Israel testified that with this information, she could perform the extrapolation, and she concluded that appellant's blood-alcohol content exceeded the legal limit of .08 at the time of the traffic stop.
Appellant argues that the record does not support the factual assumptions Israel *270 made because there is no information about the time appellant completed his last drink. Israel testified that without knowing when appellant had his last drink, she could not complete the analysis. If appellant had not reached peak absorption by the time of the stop, then appellant's blood-alcohol level still might have been rising after the stop. Israel conceded the possibility that if appellant's blood-alcohol level still were rising, appellant's blood-alcohol content would have been below the legal limit while he was driving.
Israel explained that if appellant had consumed his last drink at 9:00 p.m., then by the time of the traffic stop, appellant already would have reached peak absorption. But, Israel also explained how the absence of that variable would affect the science. Israel stated that if the time of appellant's last drink were unknown, then she could not be sure appellant's blood-alcohol content climbed above the legal limit while appellant was driving. At least one court has held an expert's testimony admissible if the expert can explain the ways in which the variables the expert does not know might affect the result. See Subirias v. State , 278 S.W.3d 406, 411-13 (Tex. App.-San Antonio 2008, pet. ref'd). Israel explained how the absence of the variable would affect her conclusion, but the record shows that the trial court reasonably could have concluded that appellant finished the drink by 9:00 p.m.
Record support for the expert's assumptions
The record reveals the following:
• During the 9:57 p.m. traffic stop, appellant informed Officer Little that he was driving home from the Dynamos game, where appellant had consumed one sixteen-ounce Dos Equis beer.[1]
• Officer Little testified that he believed appellant said he had the beer at 9:00 p.m. and noted that the specifics were in the video of the stop.
• In the video of the stop, appellant said that he had consumed one beer, in the 23rd minute of the beginning half of the soccer game.
• Appellant told Officer Little he had the beer "about an hour ago ... it had to be before 9."
• Appellant told Officer Little he had eaten one pepperoni pizza around 1:00 p.m. or 2:00 p.m. At the police station, appellant stated he had not eaten anything since noon.
Based on appellant's statements to Officer Little, the trial court reasonably could have concluded that appellant finished his beer before 9:00 p.m. See Fulenwider , 176 S.W.3d at 297 (concluding that there was evidence supporting the trial court's finding at the suppression hearing as to the time of appellant's last drink).
Appellant argues that this case is similar to Mata v. State and Veliz v. State -cases in which the Court of Criminal Appeals and this court, respectively, concluded that the trial court abused its discretion in admitting retrograde-extrapolation testimony. See Mata , 46 S.W.3d 902, 915-16 (Tex. Crim. App. 2001) ;
*271 Veliz , 474 S.W.3d 354, 362 (Tex. App.-Houston [14th Dist.] 2015, pet. ref'd). In each of these cases, though, the expert did not know any of the data points that comprised the defendant's individual factors. See Mata , 46 S.W.3d at 915 ; Veliz , 474 S.W.3d at 362. In today's case, the expert knew many of the individual factors, including (1) the amount of food and time appellant last ate, (2) the time of appellant's last drink, and (3) the time and results of appellant's breath tests. Based on this record, the trial court reasonably could have concluded that the retrograde-extrapolation evidence Israel proffered was reliable and that Israel's testimony was helpful. See Mata , 46 S.W.3d at 916-17 ; Fulenwider , 176 S.W.3d at 297. Accordingly, we conclude that the trial court did not abuse its discretion in admitting Israel's testimony. We overrule appellant's issue.
CONCLUSION
The trial court did not abuse its discretion in admitting the expert's retrograde-extrapolation testimony. We reject appellant's sole appellate challenge and affirm the trial court's judgment.

Israel testified that it is not possible for a person to drink a single, sixteen-ounce beer at 9:00 p.m. and then have a blood-alcohol level of .109 at 10:59 p.m. Nonetheless, a retrograde-extrapolation expert may base her knowledge of a defendant's personal characteristics on the amount of drinks that the defendant claimed to have consumed. See Urquhart v. State , 128 S.W.3d 701, 706-07 (Tex. App.-El Paso 2003, pet. ref'd). Israel testified that she was able to reliably extrapolate appellant's blood-alcohol content with the information she had been given.